CHARLES S. GILL, RESPONDENT, v. MINNIE HARRIS ET AL., APPELLANTS.

Kansas City Court of Appeals. February 17, 1930.

*A. L. Roberts* for respondent.

*John I. Williamson* and *John L. Gaylord* for appellant.

BOYER, C.—Action to establish mechanic's lien against real estate owned jointly by appellants. One W. R. Bump, doing business as the Peerless Repair Company, under two separate contracts with Maria P. Lynwood, tenant, furnished work and material for certain alterations in the building situated on the ground owned by appellants. Respondent Gill, as assignee of Bump, sued tenant Lynwood and these appellants to enforce an alleged right of mechanic's lien and impress same upon the interest of appellants in the real estate.

The petition alleged, *inter alia*, that Maria P. Lynwood was at all times the lessee and tenant of appellants, and as such occupied the building on the property described; that at some time prior to the 7th day of May, 1926, Bump entered into a contract with defendant Lynwood to make repairs and alterations on said building; that Bump performed said contract on his part as one entire general contract; that he made the repairs and furnished material and items shown by the statement attached to the petition; that on the 7th day of May, 1926, defendant Lynwood became and was indebted to Bump on account thereof in the sum of $951.39; that the sum of $191 had been paid thereon and the balance, $760.39 was still due, and that said account is a true statement of the indebtedness after allowing all just credits and set-offs thereon. The petition further alleges that the said Lynwood was authorized by appellants to have said repairs made and that she was appointed as their agent for that purpose and was authorized by them to make the contract with Bump, and to subject the reversionary interest of said appellants to mechanic's lien to secure the payment of such sum as might become due.

The petition further alleges that on the 16th day of August, 1926, said Bump filed in the office of the clerk of the circuit court of Jackson county, Missouri, a just and true account of said demand due him after all just credits had been given; with a description of the real estate and the names of the owners, verified by him, and as claim for lien against said real estate; and that *subsequent* to the filing of said mechanic's lien said Bump, for valuable consideration, did sell, assign, transfer and set over to the plaintiff the said account against defendant Lynwood, and the lien of said Bump upon and against said real estate and all of his right to enforce the same. Judgment was demanded against defendant Lyn-

wood in the sum claimed to be due, and for judgment sustaining a mechanic's lien in favor of plaintiff and that same be declared a special lien against all the right, title and interest of all the defendants in the real estate, and that in event no sufficient property of defendant Lynwood be found to satisfy the judgment that same be levied upon the real estate.

The answer was a general denial in which all defendants joined.

A jury was waived and the cause submitted to the court upon the evidence offered, and the court rendered a finding and judgment which found the main facts in accordance with the allegations of the petition. The court further found that Bump had included in the itemized statement attached to the mechanic's lien filed by him an item for discounting his contract in the sum of $94.27, that said item was disallowed as a part of the lienable claim against the real estate. The court found that plaintiff was entitled to recover from defendant Lynwood the sum of $760.39 with interest, and that plaintiff was entitled to mechanic's lien against the property in the sum of $666.12 with interest from date of suit. It was ordered and decreed that if no sufficient property of defendant Lynwood be found to satisfy the judgment that the real estate be sold for that purpose. From this judgment defendant property owners duly appealed.

Facts in evidence disclose that appellants were the owners of the real estate subject to encumbrance; that on the first day of May, 1926, they entered into a written lease with Ernest D. Lynwood and Maria P. Wm. Lynwood by the terms of which a certain brick building bearing numbers 2411-2413-2415-2417 Vine street, Kansas City, Jackson county, Missouri, was let to the second parties for a term of five years; that the tenants were required "to take good care of the premises and keep them in good repair," and "to make no alteration in the premises without the consent of the lessors in writing, except ordinary repairs as aforesaid." Maria P. Lynwood was in possession of the building prior to the date of the lease, and on the 22d day of April, 1926, had certain booths and partitions installed at 2413 Vine street by Bump for the agreed sum of $129.66. The work under this contract was completed on April 23, 1926. Thereafter on April 29, 1926, Bump and Maria P. Lynwood entered into a second contract for the laying of new floor, painting walls and ceilings, and certain changes of doors at number 2413-2415-2417 Vine street. This contract as well as the previous one was signed and accepted by Mrs. Lynwood as "owner" of the premises. The work under the second contract was completed May 7, 1926. In the account rendered by Bump for the work under the second contract he included an item of $94.27 as a charge for discounting his contract with respondent.

It appears that at the time of the second contract, Mrs. Lynwood informed Bump that she was not able to pay for the repairs in cash. In order to secure funds Bump discounted his contract to the respondent. There is evidence that prior to the time of discounting his contract to respondent that he endeavored to have Mrs. Lynwood sign a document in which it was recited that because the property in which the work was to be done was not subject to lien, and because the owners did not agree to pay for the repairs that Mrs. Lynwood would give her note to Bump covering the cost of the repairs and secure the note by mortgage on real estate owned by her. Mrs. Lynwood refused to sign the agreement, and Bump testified that no such agreement was ever presented to or sought to be obtained from her.

On May 10, 1926, after the completion of the work under the second contract, Bump sold and assigned all of his right, title and interest under said contract to the respondent. This assignment was evidenced by a formal written document of considerable length. By its express terms the contractor,

"Sold, assigned, transferred and set over, and does hereby sell, assign, transfer and set over unto said Charles S. Gill, his successors and assigns, all right, title and interest of the contractor in and to that certain contract for general repairs installed in and about the building at No. 2413-15-17 Vine St., Kansas City, Mo., made by Marie P., Wm. Lynwood, Minnie Harris and Julia Batrick, as owners, with the contractor, dated the 26 day of April, 1926, which is hereto attached and made a part hereof, and all sums of money now due and/or hereafter to become due thereon, including costs, charges, interest, expenses and attorneys' fees in accordance with terms of said contract, with full power and authority to Charles S. Gill, or his successors and assigns, to endorse in his own name or that of the contractor, all checks, drafts and money orders received under said contract; to sue for, collect and receipt for all indebtedness under said contract and to discharge or file claim for mechanic's lien against the property described in said contract and to foreclose said lien in his own name or that of the contractor; to sell and assign any or all right, title and interest of Charles S. Gill in and to said contract, together with any or all other powers, rights or interests herein granted, sold, assigned and set over to the said Charles S. Gill."

This assignment contract further recited that the sum of $801.39 was justly due and unpaid on said contract, payable in installments, and that the contractor had not done and would not do any act to hinder or prevent the collection of same by said Gill, but would at all times do all in his power to assist in the collection of the same, and that in case of default on the part of the property owner that

he would, at the expense of Gill, file and perfect any lien to secure said Gill; and further that there were no credits or set-offs of any kind against said indebtedness, and that entries had been made on the books of the contractor disclosing the *sale* of said contract to Charles S. Gill.

Respondent was engaged in the business of discounting contracts similar to the one held by Bump. There was testimony that before he would discount the particular contract he required Bump to satisfy him that the owners of the property had authorized the repairs and that in pursuance thereto Bump presented to him a letter purporting to agree to and authorize the improvement. The letter was signed "Minnie Harris, Julia Batrick, by A. S. Batrick, Agt." Respondent testified that Minnie Harris informed him that whatever A. S. Batrick said concerning the property on Vine street "goes" and that A. S. Batrick was her agent and had signed the letter for her. The letter was not presented to her, but witness said she was informed of its contents. Minnie Harris denied that she made any such statement and denied that Batrick was her agent for any such purpose. There was no communication of any character with defendant Julia Batrick, and there is no evidence of any kind that A. S. Batrick was authorized to sign her name to the letter and to authorize the repairs. He was her husband and had been active in leasing the property and occasionally collected rents and paid bills for the owners.

Both appellants testified that they did not know of any repairs being made to the property; that they had not consented to or authorized same; that Batrick did not represent them as agent to sign the letter mentioned or to authorize any repairs or alterations. Defendant Maria P. Lynwood testified that at the time of the contracts with Bump she advised him that the owners of the property were not liable to pay for the repairs under the terms of her lease.

Under date of August 16, 1926, W. R. Bump in his own right and in the name of the Peerless Repair Company, which was his trade name, filed his alleged mechanic's lien in the office of the circuit clerk with a view of establishing a lien upon the buildings and improvements and premises described for the benefit of his company. The lien account filed stated that the job was completed May 7, 1926, and contained a list of various items, the first of which reads: "Built partitions as per contract, $129.55." And another item: "For making loan, $94.27." Various other items describing material, labor and cost of same made up a total charge of $951.39, and showed payments thereon of $191, and balance due of $760.39. This account was verified by W. R. Bump and was to the effect that he was the owner of the Peerless Repair Company, that the account was a just and true account for work and labor

done and materials furnished, after all just credits had been given; that the material and labor had been furnished under one entire general contract with Minnie Harris and Julia Batrick.

Bump testified that he discounted his contract with respondent Gill on the 10th day of May, 1926. He said: "I discounted it to him just the same as I did in the regular run of business; that's the way I always did it." And when asked whether or not he had any interest in the account at the time he filed the mechanic's lien statement, he said: "Well, I expected sure when I discounted this with Mr. Gill, I expected I would have to protect my lien, of course. That's what I am here doing." He also testified over objection of defendants, that the account was not assigned outright. Respondent Gill volunteered that "these contracts were assigned as collateral, until such time as I called on the contractor for the lien to be perfected." There is no claim, nor is there any evidence, that contractor Bump had or retained any interest of any character in the account after his assignment to respondent, or that he had any right to any portion of any collection made or to be made by Gill upon said assigned account or contract. It was not shown in evidence what sum respondent paid to the contractor for the account, nor was there any evidence that contractor Bump was indebted to respondent in any sum in the nature of a loan or advancement, nor was there any evidence that Bump had any right or claim in any sum which respondent Gill might collect upon said account or contract in excess of the amount of money which he actually paid the contractor for the account. Respondent further testified that at the time of the assignment to him all of the defendants were notified of said assignment and to make payments to him. He further said that the account was entered in his ledger under the names of Maria P. Lynwood, Minnie Harris and Mrs. Batrick; that it was entered May 10, 1926; that it was entered as a contract for discount in the sum of $968.89; that defendants had made payments aggregating $231; that the item of $94.27 is included in the total he is talking about; that the contract came to him with that item included; that he did not know who made the payments which were received on the contract. His ledger sheet about which he testified was offered in evidence and begins with the date May 10, 1926, and the first item of debits is $951.39, to which is added under date of November 16, the sum of $17.50 for costs and attorney's fee, making up the total debit of $968.89. Under date of May 10, 1926, is shown "1st pyt. cont. $150." Following that, in June and July, are other credit payments.

Reference will be made, in the course of the opinion, to such other evidence as may be appropriate to the points under review.

## OPINION.

The assignments may be grouped thus: (1) The court erred in refusing to sustain the separate demurrers of the appellants. (2) The findings are not supported by the evidence. (3) That respondent cannot maintain his suit and rely upon the mechanic's lien account filed by Bump. (4) The court erred in admitting the lien statement in evidence. (5) That the judgment is fatally defective in form and substance.

Under the facts in evidence we think it obvious, and the conclusion inevitable, that respondent had no right to rely upon the mechanic's lien account filed by contractor Bump. Several reasons suggest themselves in view of the uncontradicted evidence. Respondent received his assignment under date of May 10, 1926, and from that time hence was the owner of the account. There is no claim, and there is no evidence, of any other or further assignment of this account to him. He did not file a mechanic's lien statement, nor did any one else file one for him. On the 16th day of August, 1926, contractor Bump filed the alleged mechanic's lien account in the name of the Peerless Repair Company, with a view to avail said company of the benefit of the statute relating to mechanic's lien. He made the affidavit to said statement in which he says:

"That he is the owner of Peerless Repair Co., that the facts set forth in the preceding statement are true and said statement is hereby made a part of this affidavit; that the foregoing is a just and true account of the demand due said Peerless Repair Co. for work and labor done, and materials furnished by Peerless Repair Co. upon, to and for the buildings and improvements hereinbefore described, after all just credits have been given."

The lien account set forth not only the items of material and work and labor furnished under the contract, assigned to respondent, but also included the item of $129.66 for building partitions under the first contract, which was not assigned, and also the charge for discounting his contract in the sum of $94.27. In reference to the last item Bump testified:

"Q. I notice an item on this plaintiff's exhibit B, Mr. Bump, which states that ten per cent of the amount of the invoice charged for making the loan by Mr. Gill. Was the ten per cent of the amount of the invoice paid as a commission for making the loan? A. That's the discount on the paper on my contract.

"Q. And this ten per cent includes or is one of the items for which you are claiming a lien, is that correct? A. Well, that's a part of my account."

The court found that Bump had included in the statement attached to the mechanic's lien the item for discounting the contract

in the sum of $94.27; that said item was non-lienable, and it was disallowed.

If Bump was the owner of this lien account at the time it was filed, then respondent cannot rely upon it because there was never any assignment or transfer of the lien account *subsequent* to the time of its being filed; and there is no claim or pretense that there was ever any assignment to respondent, except the one under date of May 10, 1926. If Bump was not the owner of the account at the time the lien statement was filed, the act of filing it was a nullity, and would afford no basis for the assertion of a right by the true owner of the account, who failed to file a lien statement.

Further, neither respondent nor any one else could reply upon the mechanic's lien statement filed, unless it be a "just and true account of the demand due him or them after all just credits have been given, which is to be a lien upon such building or other improvements." The last quoted words are from section 7221, Revised Statutes 1919, providing the exact and particular method which must be pursued by one seeking to claim the benefit of a mechanic's lien. A compliance with the statute is a condition precedent to the right to maintain the action, and to fix a lien upon property. That the account filed was not a just and true account must be admitted, because the evidence shows that it is both unjust and untrue. It is, in effect, admitted by respondent that the discount item was improperly included in the statement, but he characterizes it merely as an "innocent mistake." It will be observed that this "innocent mistake" was made repeatedly. It was inserted as an item in the contract which was assigned to respondent. It was listed in the mechanic's lien statement filed by Bump. It was included in the petition filed by respondent; and Bump testified that it was a part of his account; and respondent testified it was a part of the contract account purchased by him. There was never before any suggestion of accident, inadvertence, or "innocent mistake" in respect to this item. In fact, it can only be said truthfully that the item was inserted, from the beginning to the close as an intentional charge, and was intentionally and knowingly inserted in the mechanic's lien statement, and asserted in the petition in this case as an item properly chargeable as a lien upon the real estate of appellants. Now, it must be conceded that "a just and true account" is the foundation of the right to maintain the suit; and that an unjust and untrue account, knowingly made, forms no basis for a lien, and no foundation for a cause of action to enforce it, but vitiates the entire right of lien. [State ex rel. v. Shelton, 238 Mo. l. c. 292; Brick Company v. Green, 177 Mo. App. l. c. 317; Mining Co. v. Coyne, 164 Mo. App. l. c. 509, 510; Lime Stone Co. v. Method-

ist Church, 156 Mo. App. 1. c. 672; Dougherty v. Rothbaum, 156 Mo. App. 215; Hoffman v. Walton, 36 Mo. 614; N. O. Nelson Mfg. Co. v. Doherty, 191 S. W. 983, 986.]

The lien statement says that Bump is the owner of the account. If this be true, respondent is not the real party in interest and cannot maintain his suit. If it be untrue, respondent cannot rely upon it for that very reason.

Under the facts and the law, respondent had no right to a judgment establishing a lien in his favor against the property of the appellants, and it must be held that the trial court erred in refusing to sustain the demurrers of the appellants, and in rendering judgment establishing a lien upon their property.

The evidence does not support the findings and judgment of the court. It will be observed that the petition alleged that subsequent to the filing of the mechanic's lien account it was sold and assigned to plaintiff, and that the finding of the court is in accordance with the allegation in the petition. Such finding is wholly unsupported by any evidence in the record, but is directly contrary to all the proof upon the subject. As stated before, there was not a scintilla of evidence of any assignment or transfer of the lien account to the plaintiff other than the assignment of May 10, 1926. There were other findings of fact recited in the judgment which were equally unsupported by the evidence and were wholly unauthorized, but which do not necessarily call for extended comment. A failure of proof upon any vital point is sufficient to defeat the judgment. A finding and judgment unsupported by evidence cannot stand.

The view which we take of this case, and the conclusion reached, renders it unnecessary to consider other assignments. The judgment rendered was defective in form, in that it failed to declare any judgment against the principal debtor. Subsequent to this appeal and the submission of the case to this court, additional abstracts have been furnished showing that respondent applied to the trial court and obtained an entry *nunc pro tunc* supplying the deficiency in the judgment. Appellants objected and excepted to such action and ruling of the court and have taken the initial steps toward an appeal from that order. The propriety or regularity of the action of the court in respect to the *nunc pro tunc* entry is not before us for consideration; and in view of the conclusion which we have reached in this case, there is no call for further attention to the subject. The judgment rendered against appellants was erroneous and should be reversed. The Commissioner so recommends. *Barnett, C.,* concurs.

PER CURIAM:—The foregoing opinion by BOYER, C., is hereby adopted as the opinion of the court. The judgment is reversed. All concur, except *Trimble, P. J.,* absent.