SEARS, ROEBUCK AND COMPANY, a corporation, Plaintiff-Respondent,

v.

SEVEN PALMS MOTOR INN, INC., Defendant,

Commerce Mortgage Company et al., Defendants-Appellants.

No. 59021.

Supreme Court of Missouri, en banc.

Dec. 18, 1975.

Gerald Ortbals, Clayton, for defendants-appellants.

Theodore C. Salveter IV and William E. Stone, Springfield, for plaintiff-respondent.

HENLEY, Judge.

This case is here on transfer from the court of appeals, Springfield district, after opinion.

It involves a claim by Sears, Roebuck and Company (respondent) to recover $8,357.49 with interest, and to establish a mechanic's lien, for materials and labor including, among other items, drapes and bedspreads furnished Seven Palms Motor Inn (defendant) in connection with the construction of a motel on land then owned by it. The case was submitted on a stipulation in which it was agreed, in substance, that respondent furnished to defendant all the items listed in the lien statement, that defendant is therefore indebted to respondent in the amount above stated, and that the only issue to be decided is whether respondent is entitled to a mechanic's lien. The trial court decided this issue for respondent and entered judgment accordingly. The court of appeals affirmed the money judgment but reversed that portion of the judgment imposing the lien, holding that the bedspreads were not lienable items and their inclusion in the statement vitiated the entire lien. While we determine the case the same as on original appeal, Mo.Const. Art. V, § 10, we ordered the transfer primarily to review the questions presented by the holding that the whole lien was vitiated. We decide that it was not.

Other pertinent facts included in the stipulation are:

1. That in addition to drapes and bedspreads, respondent furnished and installed other articles, described in the lien statement by item and the price of each, being: 106 one-way traverse rods; one center draw basic traverse rod; 29 heavy-duty steel curtain rods; and four pair of swinging louvered doors.

2. The only items described in the lien statement which appellants, Commerce Mortgage Company (present owner of the property) and others, claim are not lienable are the drapes and bedspreads.

3. The bedspreads and drapes throughout the motel are matching in color and design and were specially ordered and custom-made for the motel.

4. That the bedspreads are not physically attached to the motel premises in any way but are made to fit over beds in the usual manner; that the drapes are attached to rods which are affixed to the building.

Parts of the opinion of the court of appeals are utilized.

Section 429.010, RSMo 1969 provides in part: "Every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material [or], fixtures . . . for any building . . . under or by virtue of any contract with the owner . . . upon complying with the provisions of sections 429.010 to 429.340, shall have for his work or labor done, or materials [or], fixtures . . . furnished, a lien upon such building . . . and upon the land . . . ."

■ Characterization of an item as a fixture, something otherwise personal but attached to realty under such circumstances as to become part of it, depends upon the finding of three elements: annexation to the realty, adaption to the use to which the realty is devoted, and intent of the annexor that the object become a permanent accession to the freehold. Missouri cases are

uniform in requiring each of these elements to be present in some degree, however slight, before an item may be considered a fixture. *Blackwell Printing Co. v. Blackwell-Wielandy Co.*, 440 S.W.2d 433, 438[5] (Mo.1969); *State ex rel. State Highway Commission v. Wally Hutter Oil Co.*, 467 S.W.2d 279, 281[1] (Mo.App.1971).

Appellants contend that neither the drapes nor the bedspreads are fixtures within the meaning of § 429.010 and therefore not lienable, because they are not annexed or attached to the building.

In *Crane Co. v. Epworth Hotel Construction and Real Estate Co.*, 121 Mo.App. 209, 98 S.W. 795 (1906) the plaintiff sought a mechanic's lien for fire hose (and hose racks) sold to defendant and attached to standpipes installed to convey water for fire protection purposes and run up through the floors of the Epworth Hotel, the hose being attached by screwing it to a valve projecting from the pipe. The court noted that the hose could be either attached or detached by a man with his bare hand, and this could be done without marring the pipe. Stating that it was intended that this attachment be permanent, the court held that the hose was a fixture and lienable. In reaching that conclusion the court said (98 S.W. at 797): "Of [the elements of annexation, adaptation, and intent] in modern times the latter two are more important than the one relating to the method by which the chattel is attached to the freehold. Such annexation, though slight and easily displaced, will not prevent an article becoming a fixture which is adapted to the proper use of a building, and which was placed therein by the owner with the intent of forming a part of the special object and design for which the building was constructed." Cf. *Woodling v. Westport Hotel Operating Co.*, 227 Mo.App. 1231, 63 S.W.2d 207, 210[8, 9] (1933).

■ The purpose of attaching the traverse rods to the realty was to hang drapes therefrom which could be opened or drawn across a window by the motel's guest to control the light in his room or secure his privacy. Of itself, the traverse rod attached to the wall above the window in the room did not accomplish this purpose. To serve this purpose it was essential that the drapes be provided and attached to the rod. They were provided and attached, and became an integral part of the instrument designed for use in connection with the window in the guest's room. As such, the drapes were as much a fixture as the traverse rod itself. It is obvious that the rod and drapes, as a unit, were adapted to the proper use of rooms in a motel and were placed therein with the intent they would form a part of the special purpose for which the building was designed to be used.

Not so the bedspreads. Respondent admits that those items are not physically attached to the realty in any way but insists that they have been "constructively annexed." In support of this proposition, respondent argues: the rods are physically fastened to the building; the drapes are affixed to the rods by hooks; the bedspreads match the drapes; a fortiori, the bedspreads "are at least 'constructively annexed' to the rooms . . . by their relationship with the drapes."

■ The doctrine of constructive annexation recognizes that a particular article, not physically attached to the land, "may be so adapted to the use to which the land is put that it may be considered an integral part of the land" and "constructively annexed" thereto. 36A C.J.S. Fixtures § 6, pp. 613–614. Since its development, the doctrine has ordinarily been applied to only three types of objects: (a) machinery placed in an industrial establishment for permanent use and necessary to the operation of the plant (sometimes referred to as "the integrated industrial plant rule"); (b) items that are essential to the use of what is clearly a fixture and cannot readily be used independently elsewhere; and, (c) items normally physically attached to the realty that are severed for a temporary purpose such as cleaning or repair. 36A C.J.S. Fixtures § 6; 35 Am.Jur.2d Fixtures §§ 11, 13, 75–77.

The "integrated industrial plant rule" is usually applied only to industrial plants using a substantial amount of machinery and tools, some of which are essential to the plant's operation even though not bolted to the floor or otherwise physically attached. 35 Am.Jur.2d Fixtures §§ 13, 101; 36A C.J.S. Fixtures § 11. The rule has not been applied to establishments such as hotels, restaurants, bars and apartment buildings. Thus, movable furniture, tableware and similar equipment, although necessary to the operation of a hotel, are generally not considered fixtures. 35 Am. Jur.2d Fixtures § 94; see: *Commercial Finance Co. v. Brooksville Hotel Co.*, 98 Fla. 410, 123 So. 814 (1929); *Klaus v. Majestic Apartment House Co.*, 250 Pa. 194, 95 A. 451 (1915).

The bedspreads are not essential to the use of what is clearly a fixture, nor has it been shown that they cannot readily be used independently elsewhere. Respondent asserts that because the bedspreads "were designed to match and to coexist with the drapes" they must be considered part of a matched set which is essential to the use of rods which are clearly fixtures. Respondent seeks support for this contention in cases that have held easily removable parts of machines and other fixtures may not be considered as separate items. *Crane Co. v. Epworth Hotel Const. & Real Estate Co.*, supra; *Heidegger v. Atlantic Milling Co.*, 16 Mo.App. 327 (1884); see also: *Globe Automatic Sprinkler Co. v. Boester*, 231 Mo.App. 203, 95 S.W.2d 825 (1936). However, in each of these cases, the fixture would have been rendered absolutely useless by removal of the items in question, and such items could not readily be used independently elsewhere. There is no indication that the unit of rod and drapes could not serve its function, which respondent says is to "regulate the flow of light and serve the need for privacy," if the bedspreads were removed. That the decor of a guest room in a motel may be more aesthetically pleasing when bedspreads are made of the same material as drapes, falls far short of the functional relationship needed to justify "constructive annexation." Since the bedspreads were not annexed, physically or constructively, they cannot be characterized as fixtures and are, therefore, nonlienable items.

Appellants contend that by including the nonlienable bedspreads in its lien statement, respondent has failed to file a "just and true account," as a result of which the entire lien is vitiated. In *Putnam v. Heathman*, 367 S.W.2d 823, 828[3–6] (Mo.App. 1963) the court said:

" * * * [S]ince the [mechanic's] lien is purely a creature of statute, the policy of liberal construction does not relieve the lien claimant from the necessity of reasonably and substantially complying with the requirements of the statute in order to secure its benefits.

* * * * * *

"The requisite foundation step for the enforcement of a lien claim is prescribed by Section 429.080 V.A.M.S., which makes it the duty of every person seeking the benefit of the lien law to file 'a just and true account of the demand due * * * which is to be a lien upon such building * * *'. A substantial compliance with that requirement is a condition precedent to the right of a lien claimant to maintain his action and to fix a lien upon the property. In *Gill v. Harris*, 224 Mo.App. 717, 24 S.W.2d 673, we said, ' * * * it must be conceded that "a just and true account" is the foundation of the right to maintain the suit; and that an unjust and untrue account, knowingly made, forms no basis for a lien, and no foundation for a cause of action to enforce it, but vitiates the entire right of lien.' "

There is no precise definition of a "just and true account" in the cases which have considered and ruled on the question. Lien statements have been held to be "just and true," or not, depending upon the particular facts of each case. Certain fundamental rules are observed in determining the issue.

It is generally recognized that a lien statement may be regarded as "just and

true," so as not to vitiate the entire lien, if the inclusion of a nonlienable item is the result of honest mistake or inadvertence without intent to defraud and if the nonlienable can be separated from the lienable items. *Putnam v. Heathman*, supra; *Woodling v. Westport Hotel Operating Co.*, supra; *Miners Lumber Co. v. Miller*, 117 S.W.2d 711, 717[11, 12] (Mo.App.1938); *Hydraulic Press Brick Co. v. McTaggart*, 76 Mo.App. 347 (1898). On the other hand, it is also recognized that a lien statement may not be regarded as "just and true" and "can form no basis for the adjudication and establishment of a lien for any part of the account" where the lien claimant deliberately, with intent to defraud, includes in the account a nonlienable item knowing it to be nonlienable. *Reese v. Hoyer*, 95 S.W.2d 884, 886[1] (Mo.App.1936); *Bremer v. Mohr*, 478 S.W.2d 14, 18[4, 5] (Mo.App.1972).

None of the cases cited by the parties decide the precise issue presented by this case. We have here a lien statement which included with several items clearly lienable two items (drapes and bedspreads) which had never been determined to be lienable or nonlienable. All of these items were admittedly furnished defendant for the price stated. The statement is presented by a lien claimant who intentionally, and not mistakenly, included these two items therein, claiming that it did so in good faith believing they were, and should be held to be, lienable on the particular facts of this case. We do not understand that appellants contend that the inclusion of these two items was the result of bad faith with an intent on the part of respondent to defraud.

█ Of these two related items, one has now been held, for the first time, to be lienable and the other nonlienable. We cannot, in reason, conclude on this record that inclusion of the latter in respondent's claim was in bad faith with intent to defraud. Rather, we conclude that respondent, believing with reason that both items were lienable, acted in good faith when it included them. Clearly, a reasonably de-batable question was presented as to whether or not these two custom-made matching items were fixtures. Respondent's argument that both were lienable was not without some substance, even though we have determined that one, the bedspreads, was not a fixture and not lienable. In these circumstances, the inclusion in the lien statement of the nonlienable item, separable as it is from the lienable items, does not vitiate the entire lien.

Appellants do not question the money judgment in favor of respondent and against defendant, Seven Palms Motor Inn. Accordingly, that part of the judgment is affirmed. That part of the judgment imposing a lien on the property for the full amount of the money judgment is reversed and the cause is remanded with directions that the trial court enter judgment in favor of respondent imposing a lien for the amount of the balance due according to the statement after deducting therefrom the amount charged for the bedspreads.

SEILER, C. J., and MORGAN, BARDGETT, FINCH and DONNELLY, JJ., concur.

HOLMAN, J., dubitante.